UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARISHA CAREE LIBBETT,<br><br>        Petitioner,<br><br>   v.<br><br>LINDA CONDRON, Warden,<br><br>        Respondent.<br>                                          / | No. C 07-2884 SI (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Carisha Caree Libbett's pro se petition for writ of habeas corpus concerning her 2005 conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A.    The Crimes

The evidence relating to the kidnapping for purposes of robbery was described in the California Court of Appeal's decision:

> [A]t 4:30 a.m. on September 17, standing outside a blue-painted 5-unit rental property at 625 South Second Street in San Jose, where she had a room, Libbett waved down Luis Chavez who agreed to a $ 60 sexual dalliance. They drove to an automatic teller machine (ATM) for money first and then repaired back to Libbett's room where, after speaking to someone in a black Chevrolet Suburban that was parked nearby, she directed Chavez upstairs and into the bathroom. Libbett directed Chavez to move a chair into the bathroom and sit down, which he did. Libbett locked the door and Chavez gave her $ 60.

   Shortly thereafter, there was a knock on the door. Libbett said, "let me see who it is," and opened the door. [Co-]Defendant [Leon Renee] Harvey rushed in, pointed "something" at Chavez and told him not to move, threatened to shoot him, and demanded money. Chavez was frightened, thought it "might be [his] last day," and obeyed. Libbett told Harvey to "put the gun away," and took Chavez's wallet containing $ 3 and his ATM card. Harvey said $ 3 was not enough and they would have to go to Chavez's bank and get more. Defendants escorted Chavez down the stairs and out to his car, a distance of 50 to 100 feet. Harvey told Chavez not to "try to do nothing because you are going to get hurt," and, all the way to the car, Chavez was wondering if he was going to be killed. At Harvey's direction, Chavez opened the passenger door first and Harvey got in. Chavez then went to open the driver's door. Defendants were waiting for him to drive them to the bank. Harvey told him not to run, that they would hurt him.

   Chavez was thinking, "what should I do now, should I run, should I wait, or should I do what they are telling me to do[?]. . . [T]here is a light. . . . Where people is [sic], . . . and the light was red and I saw something approaching. . . . I was like basically praying saying like what should I do now. [¶] Then the light turned green and the driver drove by right next to the blue apartment. I took off running. So facing. . . the white SUV and he said are you crazy. And I said no, I just been robbed and he stopped and said by who and I pointed at them. So they just stood there for a couple minutes I saw. They saw the driver stop, they took off running."

Resp. Ex. 6, Cal. Ct. App. Opinion, ¶. 1-2.

   Following a jury trial in 2005 in Santa Clara County Superior court, Libbett was found guilty of kidnapping for purposes of robbery, robbery and assault.[1] She was sentenced to life in prison with the possibility of parole plus four years. Her conviction was affirmed by the California Court of Appeal on November 14, 2006. Her petition for review was denied by the California Supreme Court on February 7, 2007.

   Libbett then filed this action, seeking a writ of habeas corpus under 28 U.S.C. § 2254. She asserts a single claim, i.e., that her right to due process was violated because the evidence was insufficient to support the kidnapping for robbery conviction.

## JURISDICTION AND VENUE

   This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged

---

[1] The particulars of the other crimes against the two other victims are not described here because Libbett's habeas petition challenges only the kidnapping for robbery conviction. Libbett's co-defendant, Harvey, also was convicted and received a life sentence.

2

conviction occurred in Santa Clara County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claim presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but

unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt, but rather determines whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338. The "prosecution need not affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court "'faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326).

California Penal Code § 209(b)(1) provides for life imprisonment with the possibility of parole for "[a]ny person who kidnaps or carries away any individual to commit robbery." Critical to Libbett's habeas claim is another portion of § 209: "This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and

4

1 increases the risk of harm to the victim over and above that necessarily present in, the intended 2 underlying offense." Cal. Penal Code § 209(b)(2). California courts have construed these two 3 prongs (i.e., movement beyond that merely incidental to the crime, and movement that increases 4 the risk of harm to the victim) as interrelated. The jury considers the scope and nature of the 5 movement to determine whether the victim's movement is merely incidental. "This includes the 6 actual distance the victim is moved. However, we have observed that there is no minimum 7 number of feet a defendant must move a victim in order to satisfy the first prong." People v. 8 Rayford, 9 Cal. 4th 1, 12 (Cal. 1994). The jury considers factors such as the decreased 9 likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the 10 defendant's enhanced opportunity to commit more crimes in deciding whether the movement 11 subjected the victim to a substantial increase in the risk of physical harm beyond that necessarily 12 present in a robbery. Id. at 13. Additionally, the California Supreme Court has found that an 13 increased risk of harm beyond that of a stationary robbery can also be measured by an increased 14 risk of psychological trauma to the victim. People v. Nguyen, 22 Cal. 4th 872, 886 (Cal. 2000). 15 "The fact that these dangers do not in fact materialize does not, of course, mean that the risk of 16 harm was not increased." Rayford, 9 Cal. 4th at 14.

17 In Libbett's case, the California Court of Appeal recited the above-mentioned law on 18 kidnapping, surveyed the cases in the field, and applied the cases to Libbett's case to conclude 19 that there was sufficient evidence of kidnapping for robbery.

> In this case, after the taking was complete (and the take was disappointing – $ 3, a wallet, and an ATM card), defendants formed the intention of performing a second robbery at a bank ATM. The movement down the stairs, through the building, and out to Chavez's truck at the curb was for the purpose of a separate robbery. . . . The 50 to 100 feet defendants forced Chavez to move, as he thought, at gunpoint, was "by no means an unsubstantial distance." [Citation omitted.]
>
> Furthermore, forcing Chavez downstairs and into his own vehicle to drive them to a different location for the commission of another crime against him under different circumstances and at a different time and place from the first robbery subjected Chavez to an increased risk of harm. There was an increased risk of harm in moving Chavez from a private room to a public street via a public stairway in a multi-unit residential building where, at 4:30 in the morning, it was likely residents would hear any commotion or outcry if Chavez's fear of defendants goaded him into taking action and Harvey, as he promised, hurt him. Chavez was forced to move while praying for guidance about whether or not to

5

> run for his life. This situation caused "a substantial increase in the risk of psychological trauma to the victim beyond that to be expected from a stationary robbery." [Citation omitted.]
>
> The further move from the relative safety of a public street with passing traffic into a private vehicle with Chavez bundled with two assailants could and did trigger a successful escape attempt, but could easily have resulted in injury to Chavez. Similar perils were possible during the intended transfer of Chavez to an ATM location at a bank in a public place which may or may not have been deserted at that hour. For example, if the defendants had been successful in forcing Chavez into the vehicle, there was a risk of an automobile accident or an injury during an escape attempt. "The fact that these dangers did not materialize does not, of course, mean that the risk of harm was not increased." [Citation omitted.]

Cal. Ct. App. Opinion, ¶. 7-8.

The due process claim presented requires the court to determine whether "<u>any</u> rational trier of fact could have found the essential elements of [kidnapping for the purposes of robbery] beyond a reasonable doubt." See Jackson, 443 U.S. at 319. Libbett's movement of Chavez was not incidental to the robbery and increased the risk of physical harm and psychological trauma to Chavez. Libbett moved Chavez a limited distance, 50 to 100 feet, and moved him to a more public location with the intent to commit a second robbery. The California Court of Appeal has found movements shorter in distance and with even less of an independent purpose sufficient for kidnapping for robbery. See, e.g., People v. Shadden, 112 Cal. Rptr. 2d 826 (Cal. App. 2001) (moving victim nine feet, from front of store to back room, established asportation not merely incidental to rape); People v. Jones, 75 Cal. App. 4th 616, 629 (Cal. App. 1999) (movement of victim 40 feet was not an insubstantial distance).

The California Court of Appeal was not proposing scenarios inconceivable to a rational trier of fact when it explained how movement toward a more public place actually did increase the risk of physical harm to Chavez. Chavez's attempted escape had the potential for substantial harm because he could have been hit by a car or shot by his robbers, or an innocent bystander could have intervened and prompted more violence by the robbers.[2] The California Supreme

---

[2] This court disagrees with the California Court of Appeal in one particular area, however. The state appellate court's discussion of the harm that might have materialized if Chavez had successfully been forced into a car and if he had been taken to an ATM go beyond what the evidence supports. A

6

1 Court had recognized this increase in risk suffices in People v. Lara, 12 Cal. 3d 903 (Cal. 1974). 2 There, the robber forced his victim to drive him around at gunpoint. The court explained that 3 such conduct substantially increased the potential for serious harm: "It takes but little 4 imagination to envision the kind of events whose likelihood of occurrence is great in a situation 5 of this kind. Ready examples include not only desperate attempts by the victim to extricate 6 himself but also unforeseen intervention by third parties." Id. at 908 n.4; cf. In re Earley, 14 Cal. 7 3d 122, 132 (Cal 1975) (robber drove victim 10-13 blocks while waving a gun at her and 8 threatening to kill her; this "asportation gave rise to dangers, not inherent in robbery, that an auto 9 accident might occur or that the victim might attempt to escape from the moving car or to be 10 pushed therefrom by [the robber]"). Libbett points to the fact that Chavez did escape unharmed 11 and, therefore, she argues, the California Court of Appeal's reasoning that an escape attempt 12 would increase the risk of harm was pure speculation. Resp. Ex. 3 at 19. Her argument is 13 unpersuasive because the state's law on kidnapping is written in terms of risks. "The fact that 14 these dangers do not in fact materialize does not, of course, mean that the risk of harm was not 15 increased." Rayford, 9 Cal. 4th at 14.

16 The increased risk of psychological harm by the movement was not a fanciful 17 consideration, either. Chavez was involuntarily moved out of the apartment building, onto the 18 public street where he was directed to get into his car to drive Libbett and Harvey to the nearby 19 ATM for a second robbery. Chavez testified that in the house he had thought that this "might 20 be [his] last day" because he had "nowhere to run." RT 438. En route he was afraid of being 21 killed. RT 442. And once on the public street, Chavez feared getting shot in an escape attempt. 22 RT 445. The increased risk of psychological harm is shown through the increasing specificity 23 of Chavez's fear at each new location. As Chavez got closer to the street, his fear became more 24 specific and the likelihood of psychological trauma increased. Not only is it reasonably probable

25

26 rational trier of fact could not have found increased danger based on these intended but not
27 accomplished movements. Although this court finds this particular determination unsupported by the evidence, the other risks identified that were based on the actual movement of Chavez are more than
28 enough to support the verdict.

7

that a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have found an increased risk of psychological trauma, but also the record suggests this trauma actually occurred. See Jackson, 443 U.S. at 319, 326.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of kidnapping for robbery proven beyond a reasonable doubt. The California Court of Appeal's decision, that the movement from the bathroom to the car in front of the apartment was sufficient evidence of movement not incidental to the robbery and that the movement increased the risk of harm to the victim, was not contrary to or an unreasonable application of clearly established federal law. Libbett is not entitled to the writ.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: July 21, 2008

SUSAN ILLSTON
United States District Judge